22 C. C. P. A. (Patents)

### In re FINLEY.

Patent Appeal No. 3463.

Court of Customs and Patent Appeals.
April 8, 1935.

Charles S. Evans, of San Francisco, Cal. (Hugh N. Orr, of San Francisco, Cal., and Joseph W. Milburn, of Washington, D. C., of counsel), for appellant.

T. A. Hostetler, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GRAHAM, Presiding Judge.

The appellant filed his application in the United States Patent Office for an improvement upon an interlocking shingle. As disclosed, the shingle is composed of a layer of asphalt saturated felt and a layer of finely crushed mineral matter superimposed upon said asphalt surface. The inventor recites in his specification: "The invention relates to roofing materials, and particularly to shingles cut from a parent sheet of prepared roofing."

Each shingle is rectangular in shape, the lower or exposed surface being curved. There is a tab extending from the lower corner of one end of the shingle, while on the other opposite end a slit is made in the lower edge, the whole being so arranged that when two shingles are placed together the tab on one engages with the slit on the other, thus securing the shingles together and in place. The underlying idea of the invention is to produce a shingled roof which will simulate a thatched roof. Each shingle is further secured by two nails driven at diagonally opposite corners to co-operate with the interlocking parts.

As to the curve on the lower edge of the shingles, and which is the principal matter of dispute here, the specification recites:

"The lower edge 13 of the shingle is bounded by an inflected curve, slightly convex adjacent the edges 8 and 11, and concave adjacent the center. It is this inflected curve together with the proportions of the shingle, which permits these shingles to be laid to present a serpentine exposed edge simulating a thatched roof."

Appellant's application was filed June 26, 1929. The Examiner was of opinion that the claims were unpatentable in view of the prior art as shown by various references cited, among these references being the references Finley, Harshberger, and Sherriff, hereinafter more particularly referred to. All the claims were finally rejected prior to March 1, 1933.

On June 14, 1932, a patent, No. 1,863,-178, was issued to Wood upon a shingle strip and method of making the same. In this patent, Wood states that he cuts his shingle strip in the following manner:

"In accordance with the invention, the sheet is slit longitudinally thereof along a harmonic curvilinear path, defined by a circular knife mounted on a rotatable cylinder, the knife lying substantially entirely in one plane extending at an inclination to the axis of the cylinder, so that as the cylinder rotates the knife will follow a harmonic sinuous course. The curvilinear slit thus made in the sheet provides complementary sections from each of which separate elements having curvilinear butt-edges may be severed. * * *"

Thereafter, the appellant filed a motion for an amendment, dated March 1, 1933, in which he sought to bring about an interference with the Wood patent aforesaid, and by which amendment additional claims were made and an amendment sought in his specification to insert the language descriptive of the curve of the lower edge of his shingle, "and is substantially in the form of a harmonic curve." These claims included also a method of producing shingle strips and a shingle element.

The Examiner was of the opinion that the amendment sought introduced new matter, inasmuch as he held that there was no disclosure in the original application of a harmonic curve. A further amendment was sought as of March 20, 1933, in which the appellant again contended that the curve which he had originally disclosed was a harmonic curve, and attached to which motion for amendment were affidavits to the effect that by a tracing of the drawing in appellant's original specification it had been found that the curve shown by him there was in fact a harmonic curve.

There was also an affidavit under rule 75, as to the said Wood patent.

The Examiner, however, again refused to permit the amendment or the affidavit under rule 75, stating that, as Wood had not been used as a reference, the affidavit was inadmissible. On appeal, the Commissioner was of opinion that the Examiner should enter and consider the amendment of March 20, 1933. On the same date upon which the appellant petitioned the Commissioner, he also appealed from the decision of the Examiner to the Board of Appeals.

The Examiner finally rejected all the claims, relying upon the following references: Harshberger, 1,657,082, January 24, 1928; Finley, 1,604,745, October 26, 1926; Wood, 1,863,178, June 14, 1932; Sherriff, 1,-701,640, February 12, 1929.

The Examiner was of opinion that the references Finley and Harshberger disclosed fully the interlocking means and the curved edge of the exposed surface of the shingles, and that there was no invention over the prior art in providing a concavo-convex edge to said shingles. He further was of opinion that there was no true coaction between the tabs, slits, and curve on the edge of the shingles, and that these constituted merely an aggregation.

As to the particular issue involved, that of the harmonic curve of Wood, the Examiner pointed out that Wood specified his curve as a harmonic curve to avoid the prior art which showed "sinuous" curves. Furthermore, Wood made his curve a harmonic curve, so that he might simultaneously cut exposed edges upon two opposed shingles or shingle strips from the same strip of material.

Claims 24 and 25, as was observed by the Examiner, recited "a regular reverse" curve. This, also, the Examiner thought was new matter. Therefore the examiner rejected claims 14 to 16, 24 and 25, as unpatentable over the prior art, held that claims 17 to 25 involved new matter not originally disclosed, and that claims 17 to 23 were properly denied the appellant in his effort to obtain interference with Wood.

The Examiner's action was affirmed by the Board of Appeals and reaffirmed on a petition for rehearing.

The Board of Appeals concluded that there was no foundation in appellant's original disclosure for claims based upon either a harmonic curve or a regular reverse curve; that from a design standpoint, the effect of the curve shown by the appellant might be the equivalent of that shown by Wood, but that the curve of Wood had certain structural advantages and limitations which distinguished it, principally, in the element of a harmonic curve. The Board called attention to the fact that except for the particular curve employed by Wood, his claims are anticipated by the patent to Morgan, No. 1,-567,538, of December 29, 1925.

As to the method claims, the Board was of opinion that there is no method described in the application or specification, cer-

tainly no teaching, that the shingle is formed from sheet material slit longitudinally thereof along a line representing a harmonic curve.

The rejected claims are numbered 14 to 25, inclusive, of which representative claims are 14, 17, 19, and 24, which are as follows:

"14. In a roof, a shingle, the lower edge of the shingle comprising a compound curve, and fastening means arranged at the convex portions of said curved edge for securing the shingle to the roof.

"17. A shingle element adapted to be laid with its major axis horizontal comprising a substantially rectangular strip of flexible water-proof material, one edge of said strip being substantially in the form of a harmonic curve, a slit spaced inwardly from one end of the strip and intersecting the curved edge of the strip and extending inwardly from said edge, a slit in the other end of the strip spaced from the curved edge and extending inwardly substantially in the direction of the major axis of the strip.

"19. The method of severing shingle strips of curvilinear butt-edge configuration from sheet roofing material, which comprises slitting the sheet longitudinally thereof along a line representing a harmonic curve, and severing the sheet on opposite sides of said curvilinear slit along successive transverse lines of severance extending alternately on opposite sides of said curvilinear slit from points adjacent the points of maximum amplitude thereof.

"24. The method of severing shingle strips of curvilinear butt-edge configuration from sheet roofing material, which comprises slitting the sheet longitudinally thereof along a line representing a regular reverse curve, and severing the sheet on opposite sides of said curvilinear slit along successive transverse lines of severance extending alternately on opposite sides of said curvilinear slit from points adjacent the points of maximum amplitude thereof."

As we agree with the conclusions reached by the Board of Appeals, it is hardly necessary to go into any exhaustive discussion of the points presented. However, briefly, it may be stated that we are unable to find any justification for the allowance of method claims, such as are presented in rejected claims 19, 20, 21, and 24. Said claims 19, 20, and 21 recite that shingle strips are made by cutting a sheet of material longitudinally thereof along a line representing a harmonic curve.

No disclosure appears in either specification or otherwise in appellant's application that such strips are cut in a harmonic curve or in a regular reverse curve, as it is stated in claim 24. It is true that the shingles are severed from each other transversely, which might argue that there must have been a strip originally. However, it appears from the drawing, figure 1, that the severance longitudinally, if this was the method of manufacture, could not have been in a continuous harmonic or regular reverse curve, because of the removal of a portion of the material from the end of the tag which is marked 16.

The principal difficulty with appellant's application and claims is that he is attempting to make claims which will read upon the Wood disclosure, and in order to do so he must make his claims conform to the only feature in the Wood disclosure which it is thought by the Patent Office tribunals constitutes patentable subject-matter, namely, the conformation of his curve upon the exposed surface of his shingle strip. In order to accomplish this, the appellant here must describe his curve as a harmonic curve, for this is the element that distinguished Wood from the prior art. If Wood did not thus distinguish his claims from the prior art, he had no patentable subject-matter, and the same is true as of the application here involved. In other words, if Wood's claims are to be read as broadly as the appellant here insists, then the appellant here has framed counts which read upon the prior art, such as Morgan.

Counsel for appellant states that there is patentably no distinction between a harmonic curve and the compound or regular reverse curve. He states this: "* * * A harmonic curve is one specific form of a regular reverse curve, which in turn is in fact a compound curve." If this be true, there are regular reverse curves and compound curves which are not harmonic. It follows that the appellant is claiming not only harmonic curves, but other curves as well. The particular limitations, therefore, of Wood's disclosure and claims were much narrower than those of the appellant here. It appears quite plainly to the court that because the drawing which the appellant originally filed with his application, on mathematical investigation, is alleged in affidavits to be in fact a harmonic curve, is not, in itself, sufficient to justify claims such as are here made by the appellant. There is nothing to indicate that the appellant had in

his mind, at the time of the filing of his specification, any conception that the particular curve which he was then showing by his drawings constituted a harmonic curve, or that such a curve was essential to the invention which he then was claiming. The Board of Appeals stated:

"* * * It is not entirely clear from the original disclosure just what the character of the curve is. The drawings themselves are on a small scale and afford little guidance in determining the mathematical character of the curve. The specification is also of little assistance. * * *"

There is, therefore, conflict on the character or sufficiency of the disclosure made by appellant's drawings, whether a true harmonic curve is or is not shown thereby. We are not convinced that there is error in the determination of both tribunals in the Patent Office, on such a record.

█ As to the article claims, claims 14, 15, and 16 plainly read upon the references Harshberger, Finley, and Sherriff. Article claims 17, 18, 22, and 23 include the element of a harmonic curve which we have just discussed, while article claim 25 includes a claim for a regular reverse curve which, also, we must hold was not disclosed and constitutes new matter.

For these reasons, thus briefly stated, the decision of the Board of Appeals is affirmed.

Affirmed.